**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MARIE F. B.,

                         Plaintiff,

v.                                                 5:20-CV-1145
                                                 (CFH)

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

**APPEARANCES:**                  **OF COUNSEL:**

Law Offices of Steven R. Dolson     STEVEN R. DOLSON, ESQ.
126 N. Salina St., Ste. 3B
Syracuse, New York 13202
Attorneys for plaintiff

Social Security Administration      DANIEL STIOCE TARABELLI, ESQ.
625 JFK Building
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION & ORDER[1]

    Plaintiff Marie F. B.[2] brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("Commissioner" or

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 4.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision & Order will identify plaintiff by first name and last initial.

"defendant") denying her application for disability insurance benefits.  Dkt. No. 1.

Plaintiff moves for a finding of disability, and the Commissioner cross moves for a

judgment on the pleadings.  Dkt. Nos. 9, 13.  For the reasons set forth below, plaintiff's

motion is denied and the Commissioner's motion is granted.

## I.    Background[3]

### A.  Factual Background

Plaintiff was born on March 26, 1966.  T. at 38, 173.  She is a high school

graduate, who attended regular education classes.  Id. at 38, 347.  Plaintiff worked for

twenty-three years as a secretary and admissions clerk at a hospital, where her job

duties also included driving to patient homes as part of a mobile outreach unit.  Id. at

39-40, 230-231.

In 2011, plaintiff suffered a traumatic brain injury as a result of a golf cart

accident.  T. at 41, 600.  She received emergency treatment at the time but continued to

experience neck pain, headaches, memory loss, and confusion.  Id. at 586.  Plaintiff

returned to work after the accident, but had difficulty performing her duties due to

memory problems and panic attacks.  Id. at 283, 347.  She was terminated from her

position with the hospital in November 2015.  Id. at 283.

After the accident, plaintiff also reported neck pain that radiated into her

shoulders and limited her ability to turn her head.  T. at 581, 600.  She participated in

physical therapy but reported little benefit.  Id. at 58-59, 581.  At her hearing, plaintiff

---

[3]  References to the administrative transcript will be cited as "T." and page citations will be to the page numbers in the bottom right-hand corner of the administrative transcript.  All other citations to documents will be to the pagination generated by the Court's electronic filing system, CM/ECF, and will reference the page numbers at the documents' header, and not the pagination of the original documents.

testified that she had difficulty sitting for extended periods and estimated that she could walk for one city block at a time before requiring a break.  Id. at 55-56.  The pain made it more difficult to perform activities of daily living, and she received assistance from family members with getting dressed, doing laundry, cleaning, or grocery shopping.  Id. at 55-57.

## B.  Procedural Background

On May 9, 2016, plaintiff  filed an application for disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of November 23, 2015. T. at 173-74.   Her application was initially denied on August 9, 2016, and plaintiff requested a hearing on August 24, 2016.  Id. at 68-79, 103-116.  Plaintiff appeared at her September 25, 2018, hearing with counsel and testified before Administrative Law Judge ("ALJ") Michael J. Kopicki.  Id. at 33-67.  Vocational Expert ("VE") Corinne J. Porter also testified.  Id. at 61-65.

On October 24, 2018, the ALJ rendered an unfavorable decision and plaintiff administratively appealed.  T. at 80-97, 159-162.  On February 10, 2020, the Appeals Council granted the request for review.  Id. at 4.  Following review of supplemental evidence, including a July 21, 2016, physical consultative examination report by Dr. Elke Lorensen that had been erroneously excluded from the record before the ALJ, the Appeals Council concurred with and adopted the ALJ's disability determination in its entirety.  Id. at 1-10.  As part of its determination, the Appeals Council found that Dr. Lorensen's report supported the ALJ's determination that plaintiff was not disabled.  Id. at 5.  In response to the final decision of the Commissioner, plaintiff timely commenced this action on September 21, 2020.  Dkt. No. 1.

**C.  The Parties' Arguments**

In support of reversal, plaintiff argues that the Commissioner's RFC determination is not supported by substantial evidence.  See Dkt. No. 9. Specifically, plaintiff contends that the Commissioner committed reversible error by (1) failing to include a physical limitation on plaintiff's ability to move her head and neck due to her cervical spine impairment, and (2) failing to properly apply the treating physician rule with respect to Dr. Alao's mental health opinion.  Id. at 5-12.  Conversely, the Commissioner argues that (1) the omission of a specific limitation related to plaintiff's neck and head movement was harmless, and (2) the ALJ and Appeals Council properly weighed Dr. Alao's opinion.  See Dkt. No. 13.

## II.    Discussion

## A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review  . . . .

[This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (internal quotation marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  However, if the correct legal standards were applied and the ALJ's finding is supported by supported by substantial evidence, such finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted); Venio v. Barnhart, 213 F.3d 578, 586 (2d Cir. 2002).

**B.  Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  Id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory

diagnostic techniques." Id. § 423(d)(3).  Additionally, the severity of the impairment is

"based [upon] objective medical facts, diagnoses or medical opinions inferable from

[the] facts, subjective complaints of pain or disability, and educational background, age,

and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458,

at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir.

1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. §

404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers
> whether the claimant has a 'severe impairment' which
> significantly limits his [or her] physical or mental ability to do
> basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has
> an impairment which is listed in Appendix 1 of the
> regulations.  If the claimant has such an impairment, the
> [Commissioner] will consider him [or her] disabled without
> considering vocational factors such as age, education, and
> work experience; the [Commissioner] presumes that a
> claimant who is afflicted with a 'listed' impairment is unable
> to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's severe
> impairment, he [or she] has the residual functional capacity
> to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past
> work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  The plaintiff bears the initial burden of proof to

establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1179-

80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth

step, the burden shifts to the Commissioner to prove that the plaintiff is still able to

engage in gainful employment somewhere.  Id. at 1180 (citing Berry, 675 F.2d at 467).

### C.  ALJ's Decision

In his October 24, 2018, decision, the ALJ first determined that plaintiff met the

insured status requirements through December 31, 2020.  T. at 85.  Applying the five-

step disability sequential evaluation, the ALJ next determined that plaintiff had not

engaged in substantial gainful activity since November 23, 2015, the alleged onset date.

Id.  The ALJ found at step two of the sequential evaluation that plaintiff had the following

severe impairments: "degenerative disc disease of the cervical spine; depressive

disorder; anxiety disorder; and neurocognitive disorder by history."  Id.

At step three, the ALJ determined that plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  T. at 86-87.  Before

reaching step four, the ALJ concluded that plaintiff retained the residual functional

capacity ("RFC") to perform less than the full range of light work.  Id. at 88-91.

Specifically, the ALJ found that plaintiff can stand and/or walk for a total of up to six

hours and sit for a total of up to six hours over the course of an eight-hour workday with

normal breaks; can frequently reach overhead bilaterally; can occasionally climb

ladders, ropes, or scaffolds; and can frequently climb ramps and stairs, stoop, crouch,

crawl, kneel, and balance.  Id. at 88.  The ALJ also found that plaintiff should avoid

concentrated exposure to dusts, fumes, gases, and similar environmental pollutants.  Id.

With regard to mental limitations, the ALJ found that plaintiff is limited to understanding,

remembering, and carrying out simple instructions involving routine and repetitive tasks
Id.

At step four, the ALJ determined that plaintiff was unable to perform her past relevant work.  T. at 91.  Considering plaintiff's RFC, age, education, and work experience, along with the VE testimony, the ALJ determined that plaintiff can perform other jobs that exist in significant numbers in the national economy, including marking clerk, fine machine operator, and bagger.  Id. at 92.  Therefore, the ALJ determined that plaintiff "has not been under a disability, as defined in the Social Security Act, from November 23, 2015 through the date of this decision."  Id. at 93.

### D.  Appeals Council's Decision

On August 4, 2020, the Appeals Council considered the entire record and made a number of findings, almost all of which corresponded to the ALJ decision.  T. at 1-10. Indeed, the Appeals Council made the general conclusion that it "concurs with and adopts in its entirety the Administrative Law Judge's rationale, findings and conclusions on all the issues related to whether the claimant was disabled for the period at issue." Id. at 6.  As to its specific findings, the Appeals Council first found that plaintiff met the insured status requirements through December 31, 2020, and had not engaged in substantial gainful activity since the alleged onset date of November 23, 2015.  Id. at 6. Next, the Appeals Council found that plaintiff had the following severe impairments: "cervical degenerative disc disease, depressive disorder, anxiety disorder and neurocognitive disorder by history."  Id.  It found that none of these impairments, either singly or in combination, rose to the level of a listed impairment  Id.

The Appeals Council found that plaintiff's impairments resulted in certain work-related limitations: she can lift and/or carry up to twenty pounds occasionally and ten pounds frequently; she can sit, stand, and walk for up to six hours each in an eight hour workday; she can frequently reach overhead bilaterally; she can occasionally climb ladders, ropes, or scaffolds, and frequently climb ramps and stairs, stoop, crouch, crawl, kneel, and balance.  T. at 6.  The Appeals Council found that plaintiff should avoid concentrated exposure to dusts, fumes, gases, and similar environmental pollutants. With regard to mental limitations, the Appeals Council found that plaintiff was limited to understanding, remembering, and carrying out simple instructions involving routine and repetitive tasks.  Id.  Relying on the VE testimony, the Appeals Council found that plaintiff was unable to perform her past relevant work but had the capability to perform jobs that existed in significant numbers in the national economy.  Id. at 7.  Accordingly, the Appeals Council found that plaintiff was not disabled at any time from November 23, 2015, through October 24, 2018, the date of the ALJ decision.  Id.

### E.  Relevant Medical Opinion Evidence

### 1.  Dr. Elke Lorensen

On July 21, 2016, Dr. Elke Lorensen performed a physical consultative examination of plaintiff.  T. at 600-604.  Prior to the examination, plaintiff reported neck pain that radiated into her shoulders on an almost continuous basis.  Id. at 600.  She also reported frequent headaches occurring two to three times per week.  Id.

With regard to activities of daily living, plaintiff reported that she cooked twice a week, cleaned seven days a week, did laundry three times per week, and went shopping once every two weeks.  T. at 601.  She was able to take care of her personal

grooming needs, and regularly watched television, listened to the radio, and took her dog for a walk.  Id.  During the examination, Dr. Lorensen observed that plaintiff appeared in no acute distress, with a normal gait and an ability to walk on heels and toes without difficulty.  Id.  Her squat was only 40%, but she required no assistive devices, and was able to change for the examination, get on and off the examination table, and rise from a chair without difficulty.  Id.  Plaintiff's cervical spine showed full flexion, extension, and lateral flexion bilaterally, but reduced rotary movement bilaterally.  Id. at 602.  Plaintiff's lumbar spine showed full flexion and rotary movement, but reduced extension and lateral flexion.  Id.  Plaintiff demonstrated full strength in the upper and lower extremities, with intact hand and finger dexterity and full grip strength in both hands.  Id.  Based on this examination, Dr. Lorensen opined that plaintiff had no gross limitations with regard to sitting, standing, walking, and handling small objects with her hands.  Id. at 603.  She opined that plaintiff had mild limitations for turning her head sideways.  Id.

Dr. Lorensen's opinion was "erroneously marked as duplicative evidence and was thus not exhibited or considered" by the ALJ.  T. at 5.  The Appeals Council found the opinion to be new and relevant evidence, and summarized the consultative opinion in its decision.  Id.  The Appeals Council did not assign a specific weight to Dr. Lorensen's opinion, but found that the consultative examiner's opinion that plaintiff had no more than mild physical functional limitations supported the ALJ's disability determination.  Id.

## 2.  Dr. Corey Ann Grassl

Dr. Corey Anne Grassl performed a consultative psychiatric evaluation of plaintiff on July 21, 2016.  T. at 347-350.  During the examination, Dr. Grassl observed that plaintiff demonstrated a cooperative demeanor and an adequate manner of relating, with appropriate eye contact and normal motor behavior.  Id. at 348.  She exhibited a coherent and goal-directed thought process despite a dysthymic and anxious mood.  Id. at 349.  Plaintiff demonstrated intact attention and concentration, but "mildly" impaired memory that was possibly attributable to her traumatic brain injury.  Id.

Based on this examination, Dr. Grassl opined that plaintiff showed no evidence of limitation in her abilities to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, make appropriate decisions, and relate adequately with others.  T. at 349.  She further opined that plaintiff is moderately limited in her abilities to perform complex tasks independently, learn new tasks, and appropriately deal with stress, and mildly limited in her ability to maintain a regular schedule.  Id. at 349-350.

The ALJ assigned "substantial weight" to Dr. Grassl's opinion, because it was supported by the results of the consultative examination.  T. at 90.  She also found the consultative examination to be supported by other record evidence of plaintiff's memory, attention and concentration, and cognition.  Id.  The Appeals Council also considered Dr. Grassl's opinion, found it "consistent with the medical evidence of record," and assigned it "significant weight"  Id. at 4.

### 3.  Physician's Assistant ("PA") Mary Barbara

PA Mary Barbara reported a treatment relationship with plaintiff dating back to December 2014.  T. at 361.  She completed a checkbox opinion questionnaire on February 23, 2017, and provided a supplemental opinion dated September 17, 2018. Id. at 361-363, 599.  PA Barbara identified plaintiff's impairments as depression, generalized anxiety disorder, and symptoms related to cervical radiculopathy.  Id. at 361.

PA Barbara opined that these impairments interfered with plaintiff's attention and concentration and would cause her to be off task up to twenty percent of the workday. T. at 361.   She estimated that plaintiff could walk one or two city blocks without resting or experiencing severe pain, could sit for forty-five minutes before needing to change positions, and could stand or walk for a total of approximately two hours over the course of an eight-hour workday.  Id. at 361-362.  PA Barbara further opined that plaintiff required the ability to shift positions at will, and the ability to walk around during the workday.  Id. at 362.  She estimated that plaintiff would need unscheduled breaks on an hourly basis due to her impairments.  Id.  In her opinion, plaintiff could frequently lift less than ten pounds, occasionally lift up to ten pounds, and could rarely lift up to twenty pounds.  Id.

Due to plaintiff's cervical spine impairments, PA Barbara opined that plaintiff could only occasionally look down or hold her head in a static position, and could rarely look up or turn her head to the right or left.  T. at 363.  She also opined that plaintiff could rarely twist, stoop, crouch, squat, or climb ladders.  Id.  In her opinion, plaintiff's impairments would cause her to miss more than four days of work per month.  Id.

In her September 2018 supplemental opinion, PA Barbara opined that plaintiff was limited to frequent reaching with her right and left arms, including overhead reaching with both extremities.  T. at 599.  PA Barbara explained that plaintiff had a "significant limitation" in overhead activity due to impairments of the neck and shoulders. Id.

The ALJ assigned PA Barbara's opinions "little weight" because she found them unsupported by the "objective medical evidence of record."  T. at 91.  In particular, the ALJ found no corroboration for the level of impairment in plaintiff's neck function, and cited specific examples from medical records, plaintiff's daily activities, and physical therapy reports that suggested lesser limitations.  Id.  For example, PA Barbara's November 2017 examination of plaintiff found no neck pain or stiffness, and no decrease in suppleness.  Id. at 91, 441-42.  In August 2017, plaintiff was able to go on rides at an amusement park.  Id. at 91, 370.  In February 2018, plaintiff reported that her neck pain and stiffness was still present but improving with physical therapy.  Id. at 91, 571.  The Appeals Council reached a similar conclusion during its review, assigning "little weight" to PA Barbara's opinions due to inconsistency with the medical records and plaintiff's activities of daily living.  Id. at 4.

### 4.  Dr. Adekola Alao

Dr. Adekola Alao had provided psychiatric treatment to plaintiff for six months at the time of his April 6, 2018, opinion.  T. at 384-388.  Although Dr. Alao's treatment notes are not part of the record, plaintiff testified that she first saw Dr. Alao every two months, but that by the time of her hearing she was seeing him on a monthly basis.  Id. at 59.  Dr. Alao diagnosed plaintiff with major depression, traumatic brain injury, and

chronic pain, and reported that plaintiff suffered from short term memory loss.  Id. at 384.  Utilizing a check-box form, Dr. Alao opined that plaintiff suffered from a number of related symptoms, including decreased energy, generalized persistent anxiety, difficulty thinking or concentrating, emotional withdrawal, and easy distractibility.  Id. at 385.

Dr. Alao opined that plaintiff has "[n]o useful ability to function" in a number of areas: remembering work-like procedures; understanding and remembering very short and simple instructions; carrying out very short and simple instructions; and maintaining attention for a two-hour segment of the workday.  T. at 386.  He further opined that plaintiff is "[u]nable to meet competitive standards" in the areas of making simple work-related decisions; understanding, remembering, and carrying out detailed instructions; setting realistic goals or making plans independently of others; and dealing with the stress associated with semiskilled and skilled work.  Id. at 386-387.  He also opined that plaintiff is "seriously limited" with regard to maintaining regular attendance and punctuality, completing a normal workday and workweek without psychological symptoms, performing at a consistent pace, responding appropriately to changes in a routine work setting, dealing with normal work stress, and being aware of normal hazards and taking appropriate precautions.  Id. at 386.  In Dr. Alao's opinion, plaintiff's impairments were likely to cause her to miss work more than four days per month.  Id. at 388.

The ALJ assigned "limited weight" to Dr. Alao's opinion, despite recognizing his status as a treating psychiatrist.  T. at 91.  She noted that Dr. Alao's opinion was prepared only six months into the treating relationship, and found no support for his conclusions in the longitudinal medical record, particularly with regard to plaintiff's

memory.  Id.  Specifically, the ALJ cited mental status examinations where plaintiff demonstrated normal cognitive functioning, and at most a mild memory impairment.  Id. at 91, 275-276, 317, 348-349.  The Appeals Council similarly assigned "little weight" to Dr. Alao's opinion during their review, finding that his opinion was inconsistent with the medical record and with plaintiff's reported daily activities.  Id. at 5.

### 5.  Dr. D. Brown

State agency psychiatric consultant Dr. D. Brown reviewed plaintiff's then-current medical records on August 8, 2016, and offered his opinion of plaintiff's functional limitations.  T. at 71-72, 74-76.  With respect to the functional area of understanding and memory, Dr. Brown opined that plaintiff was moderately limited in her ability to understand and remember detailed instructions but found no evidence of any limitations in her ability to remember locations and work-life procedures, or her ability to understand and remember very short and simple instructions.  Id. at 75.  Similarly, with regard to concentration and persistence, Dr. Brown opined that plaintiff was moderately limited in her ability to carry out detailed instructions, but otherwise showed no evidence of significant limitations in her ability to carry out very short and simple instructions, to make simple work-related decisions, to maintain attention and concentration for extended periods, to perform activities within a schedule and maintain regular attendance, or sustain an ordinary routine without special supervision.  Id.

In the area of social interaction, Dr. Brown opined that plaintiff had no significant limitations.  T. at 76.  Overall, Dr. Brown found that plaintiff retained the mental ability to "meet basic demands of unskilled work," but advised that "she would do better away from crowds."  Id.

The ALJ assigned "substantial weight" to Dr. Brown's opinion.  T. at 90.  He gave a number of reasons for doing so, including Dr. Brown's status as "an acceptable medical source with program knowledge" and the opinion's general consistency with the record evidence as a whole, including treatment records and the consultative examiner's report.  Id. at 90.  Based on their review, the Appeals Council similarly assigned "significant weight" to Dr. Brown's opinion.  Id. at 8.

### III.    Legal Analysis

### A.  RFC Determination

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms.  See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945.  "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient."  Martone, 70 F. Supp. 2d at 150. The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work.  See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960.  If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform."  Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability.  See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of

a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).  "An ALJ should consider 'all medical opinions received regarding the claimant.'" Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) ); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

The ALJ found that plaintiff could:

perform light work as defined in 20 CFR 404.1567(b) except with the following additional limitations. The claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently.  She can stand and/or walk for six hours of an eight-hour workday with normal breaks and sit for six hours of an eight-hour workday with normal breaks.  She can no more than frequently reach overhead bilaterally; occasionally climb ladders, ropes, or scaffolds; and frequently climb ramps and stairs, stoop, crouch, crawl, kneel, and balance.  She should avoid concentrated exposure to dusts, fumes, gases, and similar environmental pollutants.  The claimant is further limited to understanding, remembering, and carrying out simple instructions involving routine and repetitive tasks.

T. at 88.  The Appeals Council similarly found that plaintiff could:

lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and she can sit, stand or walk for up to 6 hours each in an 8 hour workday.  She can frequently reach overhead bilaterally, occasionally climb ladders, ropes, or scaffolds, and frequently [c]limb ramps and stairs, stoop, crouch, crawl,

kneel, and balance. She should avoid concentrated exposure to dusts, fumes, gases, and similar environmental pollutants. She was further limited to understanding, remember[ing], and carrying out simple instructions involving routine and repetitive tasks….The claimant has a moderate limitation in understanding, remembering or applying information, a mild limitation in interaction with others, a moderate limit in concentration, persisting, or maintaining pace and a mild limitation in adapting or managing oneself.

T. at 6.

The regulations define light work as work that which

involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

### B. The Treating Physician Rule

The Second Circuit has long recognized the 'treating physician rule" set out in 20 C.F.R. §§ 404.1527(c), 416.927(c). "'[T]he opinion of a [plaintiff's] treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)). However, "the opinion of the treating physician is not afforded controlling weight where ... the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."

Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must explicitly consider, inter alia, "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" Greek, 802 F.3d at 375 (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. §§ 404.1527(c) and 416.927(c) is required. Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing Halloran, 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the plaintiff replacing the consideration of the treatment relationship between the source and the plaintiff. See 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

In Estrella v. Berryhill, 925 F.3d 90 (2d Cir. 2019), the Second Circuit more recently addressed the Commissioner's failure to "explicitly" apply the regulatory factors set out in Burgess when assessing the weight to accord to a treating physician's opinion. There, the Court explained that such a failure is a procedural error and remand may be appropriate "[i]f 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment][.]'" Id. at 96 (alteration in original) (quoting Halloran, 362 F.3d at 32). The Court clarified, "[i]f, however, 'a searching review of the record' assures us 'that the substance of the treating physician rule was not traversed,' we will affirm." Estrella, 925

F.3d at 96 (quoting Halloran, 362 F.3d at 32). The Court also noted the question of "whether 'a searching review of the record ... assure[s us] ... that the substance of the ... rule was not traversed' " is "whether the record otherwise provides 'good reasons' for assigning 'little weight' to [the treating psychiatrist's] opinion." Estrella, 925 F.3d at 96.

### C. The Commissioner's Determination of the Functional Limitations Imposed by Plaintiff's Cervical Impairment Was Supported by Substantial Evidence.

Plaintiff argues that the Commissioner committed reversible error by failing to include a limitation on the movement of the head and/or neck as part of the RFC determination, particularly in light of the determination by both the ALJ and the Appeals Council that plaintiff has a severe impairment involving her cervical spine.  Dkt. No. 9 at 5-8.

In support of this argument, plaintiff relies upon Hopkins v. Comm'r of Soc. Sec., No. 6:13-CV-1082 (GTS), 2015 WL 4508630 (N.D.N.Y. July 23, 2015).  In Hopkins, the court found that the ALJ's failure to discuss the medical evidence related to the potential impact of plaintiff's serious cervical impairment on her ability to move her head or neck "calls into question whether the decision was actually based on substantial evidence." Id. at *6; see also Burek v. Saul, No. 19-CV-301 (MJR), 2020 WL 3401360, at *4 (W.D.N.Y. June 19, 2020) ("In sum, the lack of discussion by the ALJ regarding Plaintiff's limitations in the movement of her neck and head, calls into question whether her decision was actually supported by substantial evidence.")  This court agrees with the holding of Hopkins, but finds that remand is not necessary in this case precisely because the ALJ and Appeals Council considered possible limitations on plaintiff's ability to raise her head, turn her neck, and keep her head upright over the course of the workday, and marshaled

substantial evidence supporting the RFC determination that did not include such limitations.

As summarized above, the ALJ expressly considered PA Barbara's opinion that plaintiff could only occasionally look down or hold her head in a static position, and could rarely turn her head to the right or left or look up.  T. at 91, 363.  In rejecting these extreme limitations, the ALJ relied upon medical examination notes, physical therapy notes, plaintiff's daily activities, and more irregular activities such as riding amusement park rides.  Id. at 88, 91, 370, 441-442, 571.  The ALJ also considered physician-prepared imaging reports that characterize plaintiff's cervical impairments as mild degenerative disc disease, as well as plaintiff's treatment history that included inconsistent attendance at physical therapy and no recommendations for surgical intervention.  Id. at 89, 338-339, 370, 395-396, 514.

In agreeing with the ALJ's assessment of plaintiff's ability to move her head, the Appeals Council relied upon the same evidence, with the addition of Dr. Lorensen's consultative opinion that plaintiff had only mild limitations for turning her head sideways.  T. at 603.  Therefore, the Appeals Council had substantial evidence to support its determination.  See Dawn T. v. Saul, No. 8:19-CV-619 (MAD), 2020 WL 1915259, at *7 (N.D.N.Y. Apr. 20, 2020) (consultative examination that included mild limitations in turning head was not inconsistent with RFC for light work).  Accordingly, this Court will not disturb the RFC determination with regard to plaintiff's ability to move her head.[4]  See Vincent v.

---

[4] The Commissioner asserts that in any case, if the ALJ erred in excluding limitations on head and neck movements, such error would be harmless because the Dictionary of Occupational Titles does not mention repetitive head or neck movement for at least two of the representative occupations identified by the VE.  Dkt. No. 13 at 5.  Although the Court need not reach this argument as it has concluded that the ALJ's determination is based on substantial evidence, the Court notes that, in the absence of VE testimony to that effect, this Court likely would not find that such error would have been harmless.  Lockwood v. Comm'r of Soc. Sec., 914 F.3d 87, 91-94 (2d Cir. 2019) (""[w]hile this Court could guess

<u>Shalala</u>, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing <u>Carroll v. Sec'y of Health and Human Servs</u>., 705 F.2d 638, 642 (2d Cir. 1983)).

### D.  The Commissioner Properly Applied the Treating Physician Rule to Dr. Alao's Opinion.

The Appeals Council briefly addressed its review of the opinion from plaintiff's treating psychiatrist, Dr. Alao, stating:

> [o]n April 6, 2018, Dr. Ade Kola Alao opined that the claimant had no useful ability to function even in performing short, simple instructions or in making decisions.  The Appeals Council finds that this opinion is inconsistent with the medical record and with the claimant's reported daily activities. Therefore, the Appeals Council assigns [Dr. Alao's] opinions little weight.

T. at 5.  Plaintiff argues that this short analysis fails to satisfy the requirements of the treating physician rule.  This Court disagrees in light of the ALJ's proper application of the treating physician rule to Dr. Alao's opinion and the Appeals Council's express concurrence and adoption of the ALJ's "rationale, findings and conclusions on all the issues related to whether the claimant was disabled for the period at issue."  <u>Id.</u> at 6.

As discussed in more detail above, the ALJ applied the <u>Burgess</u> factors to Dr. Alao's opinion by considering his status as a treating psychiatrist, his six-month treatment relationship with plaintiff, the lack of explanation for the functional limitations that Dr. Alao ascribed to plaintiff's memory problems, and the opinion's inconsistency with the other medical evidence, including Dr. Grassl's consultative psychiatric examination.  T. at 91. Because the ALJ specifically adopted the ALJ's findings, including its analysis of Dr. Alao's opinion, the Appeals Council's analysis of Dr. Alao's opinion satisfied the treating

---

what the three jobs [the VE] identified require in reality, it [was] the [Commissioner's] duty to elicit an explanation ...").

physician rule and is supported by substantial evidence.  See Peach v. Astrue, No. 08-CV-741 (FJS/VEB), 2009 WL 7113220, at *8 (N.D.N.Y. Dec. 3, 2009), report and recommendation adopted, No. 6:08-CV-741 (FJS), 2010 WL 4609325 (N.D.N.Y. Nov. 4, 2010) ("although the Appeals Council did not itself complete the two-step process, by adopting the ALJ's findings the Commissioner's final decision contained a credibility analysis free of legal error and supported by substantial evidence."); see also Petrie v. Astrue, 412 F. App'x 401, 406-07 (2d Cir.2011) (rejecting argument that Commissioner failed to consider all relevant factors before discounting treating physician's opinion because evidence of record permitted court to "glean the rationale of [the] ALJ's decision" and "application of the correct legal standard could lead to only one conclusion") (internal citations omitted).  Thus, the Commissioner, through the ALJ and the Appeals Council, provided the requisite good reasons for assigning limited or little weight to the treating psychiatrist's opinion. See Estrella, 925 F.3d at 96.

## IV.    Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that plaintiff's motion (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion (Dkt. No. 13) is **GRANTED**.

**IT IS SO ORDERED**.

Dated:      December 15, 2021
            Albany, New York

Christian F. Hummel
U.S. Magistrate Judge